IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| NOVALETA M. EUBANKS,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK J. BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | CV 25-35-BLG-TJC<br><br><br>**ORDER** |

Plaintiff Novaleta M. Eubanks ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of her claim for disability insurance benefits and supplemental security income benefits.  (Doc. 2.)  The Commissioner subsequently filed the Administrative Record ("A.R.").  (Doc. 7.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial of disability benefits and remand for an award of disability benefits, or alternatively for further administrative proceedings.  (Doc. 9.)  The motion is fully briefed and ripe for the Court's review. (Docs. 11, 12.)

/ / /

1

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds the ALJ's decision should be **REVERSED** and **REMANDED** for further administrative proceedings.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed an application for supplemental security income on June 14, 2019.  (A.R. 66.)  A hearing was held before Administrative Law Judge Robert Freedman (the "ALJ") on November 29, 2023.  (A.R. 13–57.)  On June 5, 2024, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 66–77.)  Plaintiff requested review of the decision, and the Appeals Council denied Plaintiff's request.  (A.R. 3–5.)  Thereafter, Plaintiff filed the instant action.  (Doc. 2.)

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

"Substantial evidence is more than a mere scintilla but less than a preponderance."  *Id.* (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir.

1997)).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).  The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary.").  But even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

**B.      Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) the claimant suffers from a medically determinable

3

physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1.  Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.  Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.  Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.  Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).

5.  Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step.  *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (9th Cir. 1999) (citing 20 C.F.R. § 404.1512(d)).  At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience."  *Id*. at 1100 (citing 20 C.F.R. § 404.1560(b)(3)).

## III.  THE ALJ'S FINDINGS

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim.  First, the ALJ found Plaintiff had not engaged in substantial gainful activity since her application date of June 14, 2019.  (A.R. 68.)

Second, the ALJ found that Plaintiff had the medically determinable severe impairments of depressive disorder and anxiety disorder.  (A.R. 68–70.)  In contrast, the ALJ found that Plaintiff's migraines, gastroesophageal reflux disease, metabolism disorder, hypertension, polycystic ovarian syndrome ("PCOS"), and obesity were medically determinable impairments but were non-severe.  (A.R. 69.)

Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. (A.R. 70–72.)

Fourth, the ALJ concluded Plaintiff has the RFC to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, repetitive tasks and limited to having interactions with co-workers, supervisors, and the general public on a not more than occasional basis.

(A.R. 72.)

The ALJ next found that Plaintiff was unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (A.R. 75–76.) Thus, the ALJ found that Plaintiff was not disabled. (A.R. 77.)

## IV.   DISCUSSION

Plaintiff presents the following issues for review: (1) whether the ALJ erred in determining that Plaintiff did not meet a listed impairment at step three; (2) whether the ALJ properly evaluated Plaintiff's subjective symptom testimony; (3) whether the ALJ erred in determining the residual functional capacity ("RFC") at step four; (4) whether the ALJ properly evaluated a medical opinion in accordance with 20 C.F.R. § 416.920c; and (5) whether Plaintiff's impairments and treatment needs were properly incorporated into the hypotheticals posed to the vocational

expert.  (Doc. 9 at 5.)

### A.  Evaluation of Listing Criteria at Step Three

Plaintiff argues that the ALJ erred at step three by finding she "did not meet either the requirements of paragraph B or paragraph C of Listings 12.04 and 12.06." (*Id.* at 21.)  The government argues that Plaintiff has failed to set forth evidence that would support finding a listed impairment.  The government also points out that Plaintiff fails to dispute the ALJ's finding that she does not meet the Paragraph A criteria.  (Doc. 11 at 12–13.)

To meet a listing under 12.04 (depressive, bipolar and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders), a claimant must satisfy the requirements of Paragraphs A (medical criteria) and B (functional criteria) or Paragraphs A and C (serious and persistent criteria).  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00.  "Paragraph A substantiates the presence of a particular mental disorder. . . . Paragraphs B and C, on the other hand, describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity."  *Mariah V.A. v. Saul*, 2021 WL 1660947, at *7 (D. Mont. Apr. 28, 2021) (internal citations omitted).  To satisfy Paragraph B criteria, the claimant's mental disorder must result in an "extreme" limitation of one area, or "marked" limitation of two of the four areas, of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and

(4) adapt or manage oneself.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 §

12.00(A)(2)(b).  To satisfy the Paragraph C criteria, a claimant's mental disorder

must be "serious and persistent"; that is, a medically documented history of the

existence of the disorder over a period of at least two years, and evidence that

satisfies the criteria in both C(1) and C(2).  *Id.* § 12.00(A)(2)(c).  "[A] claimant

must show that she meets '*all* of the specified medical criteria' for a specific listing

as 'an impairment that manifests in only some of those criteria, no matter how

severely, does not qualify.'"  *Mariah V.A.*, 2021 WL 1660947, at *7 (quoting

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original) (internal

punctuation omitted).

Here, although the ALJ did not specifically state at step three that he was

evaluating Paragraph A of 12.04 and 12.06, he did explain the Paragraph A criteria

for both listings, as well as why Plaintiff did not meet the criteria for either listing.

(A.R. 70.)  In addition, the ALJ found that Plaintiff did not meet the Paragraph B

criteria because she had only mild limitations in understanding, remembering or

applying information and adapting or managing herself, and only moderate

limitations in interacting with others and concentrating, persisting, or maintaining.

(A.R. 71–72.)  The ALJ also found that Plaintiff failed to meet the criteria in

Paragraph C.  (A.R. 72.)

/ / /

At step three, the "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). "Nevertheless, the burden remains with the claimant, who must present medical evidence that her impairments meet or medically equal all of the criteria of a listed impairment." *Shalise A. v. Berryhill*, 2019 WL 2403142, at *2 (D. Mont. June 7, 2019). To show that the ALJ erred at step three, the claimant must identify which listing she believes she meets or equals, and the claimant bears the burden of setting forth evidence which would support the diagnosis and findings of a listed impairment. *Burch*, 400 F.3d at 683–84. The Court will address the criteria under Listings 12.04 and 12.06 in turn.

### 1.    Listing 12.04

#### a.    Paragraph A

Paragraph A of Listing 12.04 (depressive, bipolar and related disorders) must be satisfied by "[m]edical documentation of the requirements of" either depressive disorder or bipolar disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(A). Depressive disorder is characterized in the listing as comprising five or more of the following:

1. Depressed mood;
2. Diminished interest in almost all activities;
3. Appetite disturbance with change in weight;
4. Sleep disturbance;

5. Observable psychomotor agitation or retardation;
6. Decreased energy;
7. Feelings of guilt or worthlessness;
8. Difficulty concentrating or thinking; or
9. Thoughts of death or suicide.

*Id.* § 12.04(A)(1).

Although Plaintiff argues that she meets the criteria for Listing 12.04, she does not articulate where the ALJ erred in finding that she did not satisfy the requirements of Paragraph A.  Nevertheless, Plaintiff alludes to evidence of "chronic anhedonia,[1] poor sleep, [and] poor eating habits," (Doc. 9 at 23) as well as "very low energy, significant depression, poor concentration, . . . and poor focus." (*Id.* at 24.)  The record also contains medical documentation of anhedonia and/or loss of interest (A.R. 464, 468, 544, 592, 594, 634, 669), sleep disturbance (A.R. 589), fatigue and/or decreased energy (A.R. 463–65, 467, 470, 557, 560, 565–66, 592, 594, 596, 598, 602–03, 634, 637, 669, 678), and difficulty concentrating or focusing (A.R. 545, 566, 617, 637, 669–70, 678).

/ / /

---

[1] In 2016, the listing criteria were updated and "Anhedonia or pervasive loss of interest in almost all activities" was replaced by "Diminished interest in almost all activities."  Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138, 66,167 (Sep. 26, 2016).  Anhedonia is "a psychological condition characterized by inability to experience pleasure in normally pleasurable acts." *Anhedonia*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/anhedonia (last visited Mar. 3, 2026).  Accordingly, the Court will interpret Plaintiff's references to anhedonia as consistent with "Diminished interest in almost all activities" in the Paragraph A listing criteria.

The ALJ found that "claimant reports having decreased energy and depressed mood at times, but does not experience a total of five or more signs and symptoms as required to meet the criteria of listing 12.04." (A.R. 70.)  In support of this statement, however, the ALJ cites to the following records: a March 2020 mental status exam that reads, in part, "[h]er concentration to completion was below average," (A.R. 545); a September 2021 medical record that states, in part, "motivation: the thought of getting out to the dollar store is even too much on some days," (A.R. 560); and a December 2021 medical record that mentions loss of interest (A.R. 557).  The ALJ makes no attempt to distinguish these findings, nor does he address the numerous other aforementioned documentations of Listing 12.04 Paragraph A criteria contained in Plaintiff's medical record.

Therefore, given the medical documentation of the requirements of depressive disorder and lack of analysis by the ALJ, the Court finds the ALJ's conclusion that Plaintiff failed to satisfy Paragraph A of Listing 12.04 is not supported by substantial evidence.

### b.    Paragraph B

In addition to satisfying the requirements of Paragraph A, Plaintiff must also satisfy the requirements of either Paragraph B or Paragraph C within Listing 12.04. To satisfy Paragraph B, a claimant must show an extreme limitation of one—or marked limitation of two—of the following areas of mental functioning: (1)

understanding, remembering, or applying information; (2) interacting with others; (3) concentration, persistence, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(B).

An extreme limitation in an area of mental functioning is present when the claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis," while a marked limitation in an area of mental functioning requires that the claimant is "seriously limited" in functioning. *Id.* § 12.00(F)(2).  A moderate limitation, on the other hand, means the claimant's functioning is "fair," while a mild limitation means the claimant's functioning is only "slightly limited."  *Id.*

Plaintiff argues that she has marked limitations in three of the four areas outlined in Paragraph B: interacting with others; concentration, persistence, or maintaining pace; and adapting or managing oneself.  (Doc. 9 at 21, 24, 26.)  In contrast, the ALJ found Plaintiff possessed only moderate limitations interacting with others, and concentrating, persisting, or maintaining pace, and only mild limitation in the other two areas.  (A.R. 71–72.)

### i.    Understanding, Remembering, or Applying Information

The ALJ found that Plaintiff has a mild limitation in understanding, remembering, or applying information.  (A.R. 71.)  While Plaintiff contests the ALJ's findings as to the other three areas of mental functioning, Plaintiff does not

allege that the ALJ erred in assessing only a mild limitation in understanding, remembering, or applying information. (*See* Doc. 9 at 21.) In support of his finding, the ALJ referenced Plaintiff's testimony about her activities of daily living and cited to Plaintiff's medical records. (A.R. 71.) Accordingly, the Court finds the ALJ's conclusion that Plaintiff only has a mild limitation in this area is adequately supported by substantial evidence.

### ii.    Interacting with Others

The second area of mental functioning—interacting with others—refers to "the abilities to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E)(2). Examples include when the claimant is able to (1) cooperate with others; (2) ask for help when needed; (3) handle conflicts with others; (4) state her own point of view; (5) initiate or sustain conversation; (6) understand and respond to social cues; (7) respond to requests, suggestions, criticism, correction, and challenges; and (8) keep interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. *Id.*

Plaintiff argues she "would have significant difficulties not only working with the public but also working with co-workers and supervisors due to low mood, low energy, amotivation, irritability, and panic attacks." (Doc. 9 at 22.) She also contends she "would be incapable of appropriately handling conflicts with others in the work setting on a regular basis . . . [and] would have serious

13

impairment in keeping social interactions free of excessive irritability or an anxiety response such as a panic attack." (*Id.*)

In finding only moderate limitation in this area, however, the ALJ points to evidence that, in appointments with medical providers, Plaintiff "presents as open and friendly with good eye contact, cooperative behavior, and normal speech . . . [and] is often described as having euthymic mood and full affect." (A.R. 71.) The ALJ also relied on the fact that Plaintiff is able to live in a trailer with her father and stepmother, eat in restaurants with them once a month, go camping with them once a year, and maintain social media accounts. (A.R. 71.) The ALJ's findings are supported by evidence in the record.

Plaintiff argues a different interpretation should be drawn from the medical records. But the Court may not substitute its judgment for that of the ALJ. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Rather, it "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). Therefore, while the evidence illustrates that Plaintiff has limitations in her ability to interact with others, the Court finds that the ALJ's determination that Plaintiff is only moderately limited in this area is supported by substantial evidence.

/ / /

### iii.    Concentration, Persistence, or Maintaining Pace

This third area of mental functioning refers to "the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E)(3).  Examples include when the claimant is able to (1) initiate and perform a task that she understands and knows how to do; (2) work at an appropriate and consistent pace; (3) complete tasks in a timely manner; (4) ignore or avoid distractions while working; (5) change activities or work settings without being disruptive; (6) work close to or with others without interrupting or distracting them; (7) sustain an ordinary routine and regular attendance at work; and (8) work a full day without needing more than the allotted number or length of rest periods during the day.  *Id.*

Plaintiff argues she "would be incapable of completing tasks in a timely manner and cannot sustain concentration, persistence, or pace secondary to her low energy, depression, poor sleep, amotivation, social anxiety, panic attacks, and irritability."  (Doc. 9 at 26.)

The ALJ, on the other hand, found that Plaintiff's "thought process is consistently coherent and goal directed without obsessions or delusions."  (A.R. 71.)  The ALJ also supported his finding with evidence that Plaintiff is "able to complete activities of daily living such as loading and unloading the dishwasher, preparing meals, and emptying the litterbox, and can use electronic devices on a

15

daily basis to watch videos on YouTube and engage in social media applications

. . . and [also] prepared a Thanksgiving dinner for her family this past year

independently." (A.R. 71.)  The ALJ's findings are supported by evidence in the

record.

Again, the Court cannot substitute its judgment for that of the ALJ.  The

Court, therefore, finds that the ALJ's conclusion that Plaintiff is only moderately

limited in her abilities to concentrate, persist, or maintain pace, is supported by

substantial evidence.

### iv.    Adapting or Managing Oneself

The fourth area of mental functioning refers to "the abilities to regulate

emotions, control behavior, and maintain well-being in a work setting."  20 C.F.R.

Pt. 404, Subpt. P, App. 1 § 12.00(E)(4).  Examples include when the claimant is

able to (1) respond to demands; (2) adapt to changes; (3) manage her

psychologically based symptoms; (4) distinguish between acceptable and

unacceptable work performance; (5) set realistic goals; (6) make plans for herself

independently of others; (7) maintain personal hygiene and attire appropriate to a

work setting; and (8) be aware of normal hazards and take appropriate precautions.

*Id.*

Plaintiff argues she is seriously limited in her ability to control her behavior,

regulate her emotions, and maintain well-being in a work setting on a sustained

basis.  (Doc. 9 at 26.)  Plaintiff alleges she has great difficulty with self-care, evidenced by the fact that she only showers once a week or once every two weeks and usually "lives" in her pajamas.  (*Id.*)

The ALJ notes that Plaintiff "is able to engage in personal care activities such as meal preparation, feeding herself, bathing, and dressing independently and is able to help care for her family's three cats," and in medical appointments she "presents with good grooming and hygiene."  (A.R. 72.)  The ALJ's findings are supported by the record and constitute substantial evidence that Plaintiff lacks a marked limitation in adapting or managing herself.

Therefore, the Court finds there is substantial evidence to support the ALJ's determination with respect to the Paragraph B criteria for Listing 12.04.  Plaintiff argues a different interpretation should be drawn from the records, but, as previously stated, the Court may not substitute its judgment for that of the ALJ and must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.

### c.    Paragraph C

Plaintiff may also meet the requirements for Listing 12.04 by satisfying the criteria of Paragraph C, which requires that the mental disorder be "serious and persistent."  Specifically, Plaintiff must show she has each of the following: (1) a medically documented history of the disorder's existence over a period of at least

17

two years, (2) her reliance on medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and diminishes the symptoms and signs of the disorder, and (3) marginal adjustment, which means a minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(C).

Plaintiff argues that she meets the criteria for Paragraph C.  (Doc. 9 at 28–29.)  The ALJ concluded, however, that "[t]he record does not indicate that the claimant experiences 'serious and persistent' symptoms and signs of the mental disorders," nor that "the claimant requires highly structured settings with regard to treatment or marginal adjustment when adapting to changes."  (A.R. 72.)

Plaintiff's depressive disorder is documented for well over two years and the record demonstrates that she receives mental health treatment in the form of therapy and medication, that this is ongoing, and that this treatment diminishes the symptoms and signs of her disorder.  (*See, e.g.,* A.R. 470, 670.)  Nevertheless, the ALJ cites to medical records that note Plaintiff stopped taking her prescribed medications for weeks and months at a time (A.R. 633), stopped seeing her therapist for months at a time (A.R. 684), and failed to schedule follow-up psychiatric visits (A.R. 684).  (A.R. 72.)

As for the final Paragraph C criterion, Plaintiff has not shown that the administrative record establishes marginal adjustment.  A claimant is said to

18

achieve only marginal adjustment "when the evidence shows that changes or increased demands have led to exacerbation of [the claimant's] symptoms and signs and to deterioration in [the claimant's] functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(2)(c). Examples of such deterioration include when the claimant becomes unable to function outside of the home or when a significant change in medication or other treatment was necessitated. *Id.*

Here, the ALJ found that the record does not support a finding that Plaintiff has marginal adjustment when adapting to changes. (A.R. 72.) Although the ALJ did not state specific reasons for rejecting a finding of marginal adjustment, he does support his finding with a citation to a medical exam report indicating that Plaintiff drove herself to and from an exam with a new doctor, feels comfortable driving, and did not experience any struggles in her mental or emotional state as a result of seeing the new doctor. (A.R. 545.)

Plaintiff contends that she has only marginal adjustment "because despite adherence to prescribed treatment she has not shown significant improvement after years of therapy and medication changes." (Doc. 9 at 28.) Plaintiff goes on to admit, however, that she has not adhered to her prescribed treatment and has, in fact, gone off her medication altogether multiple times and also misunderstood medication dosage instructions. (*Id.*) Plaintiff also points to struggles interacting with others, including anxiety and panic attacks that cause her to isolate herself,

19

and also alleges difficulty completing tasks or meeting expectations. (*Id.* at 29.) But Plaintiff does not point to any specific record evidence that indicates she possesses a minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life.

Accordingly, the Court finds the ALJ's determination that Plaintiff does not meet the requirements of Paragraph C is supported by substantial evidence. Therefore, the ALJ did not err in determining that Plaintiff does not meet the criteria of Listing 12.04.

### 2. Listing 12.06

#### a. Paragraph A

Paragraph A of Listing 12.06 (anxiety and obsessive-compulsive disorders) must be satisfied by "[m]edical documentation of the requirements of" either anxiety disorder, panic disorder or agoraphobia, or obsessive-compulsive disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06(A). Anxiety disorder is characterized in the listing as comprising three or more of the following:

1. Restlessness;
2. Easily fatigued;
3. Difficulty concentrating;
4. Irritability;
5. Muscle tension; or
6. Sleep disturbance.

*Id.* § 12.06(A)(1).

/ / /

20

In evaluating whether Plaintiff met Paragraph A of Listing 12.06, the ALJ again did not explicitly mention Paragraph A, but nevertheless found that, although "claimant reports having panic attacks and becoming easily fatigued . . . these signs and symptoms are not documented throughout her treatment records or in any mental status evaluations." (A.R. 70.) But the ALJ omits mention of difficulty concentrating, irritability, or sleep disturbances, even though some of the medical records he cites in support of his conclusion note these symptoms. (*See* A.R. 464 ("irritability: endorses"); A.R. 545 ("concentration to completion was below average"); A.R. 634 ("Sleep: Worse over the last few days; difficulty falling and staying asleep").)

Plaintiff argues that she meets the criteria for Listing 12.06 but, again, does not articulate where the ALJ erred in finding that she did not satisfy the requirements of Paragraph A. Nevertheless, in addition to the allusions to and medical documentation of fatigue, difficulty concentrating, and sleep disturbance the Court noted in its analysis of the Paragraph A criteria for Listing 12.04, Plaintiff also references irritability (Doc. 9 at 22, 24, 26) and there is evidence of irritability in her medical records (A.R. 464, 576, 589, 603, 637, 678).

Therefore, there is evidence in the record to support a finding of anxiety disorder under Paragraph A.

/ / /

21

### b.    Paragraph B

In addition to satisfying the requirements of Paragraph A, however, Plaintiff must also satisfy the requirements of either Paragraph B or Paragraph C within Listing 12.06.  The Court previously discussed Plaintiff's limitations in mental functioning under the Paragraph B criteria in its analysis of Listing 12.04, and the same conclusions apply here.  Therefore, Plaintiff has not satisfied the requirements of Paragraph B.

### c.    Paragraph C

Plaintiff has also not shown that she meets the requirement of Paragraph C of Listing 12.06.  Again, Plaintiff must show she has each of the following: (1) a medically documented history of the disorder's existence over a period of at least two years, (2) a reliance on treatment that is ongoing and diminishes the symptoms and signs of the disorder, and (3) marginal adjustment.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06(C).

Neither Plaintiff nor the ALJ distinguish between Listing 12.04 and 12.06 in their analysis of the Paragraph C criteria.  Although Plaintiff has a documented history of anxiety disorder going back more than two years, for the same reasons as those stated regarding Listing 12.04, the administrative record does not establish reliance on treatment or marginal adjustment.  Therefore, the Court finds that the ALJ's finding that Plaintiff does not meet the requirements of Paragraph C is

22

supported by substantial evidence.

In conclusion, the Court finds the ALJ did not err at step three in finding that Plaintiff does not meet the listing criteria for 12.04 and 12.06.

### B.    Evaluation of Subjective Symptom Testimony

Plaintiff also argues that the ALJ improperly discounted her subjective symptom testimony regarding her limitations and "erred in failing to explain why [Plaintiff's] statements were not consistent with the medical evidence of record." (Doc. 9 at 17.)

A claimant's testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ provides "specific, clear and convincing reasons" for doing so. *Id.*

"In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). "General

findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  As noted by the Ninth Circuit, "[t]his is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002)).

To assess a claimant's subjective symptom testimony, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603–04 (9th Cir. 1989).  An ALJ may also take the lack of objective medical evidence into consideration.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196–97 (9th Cir. 2004).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but that her statements concerning these symptoms were not entirely consistent with the medical evidence in the record.  Therefore, the ALJ was required to cite specific, clear, and convincing reasons for rejecting Plaintiff's subjective testimony about

24

the severity of her symptoms.  The Court finds the ALJ failed to do so.

While some of the ALJ's conclusions are adequately supported with citations to the record, other conclusions are unsupported or reached summarily, without indication of which specific aspects of Plaintiff's testimony are being rejected.

For instance, the ALJ found that Plaintiff's PCOS "does not interfere with her functioning," (A.R. 69), in direct contradiction of Plaintiff's testimony that this condition "makes it even difficulter [sic] to function."  (A.R. 36.)  The ALJ discounted Plaintiff's testimony that she experiences migraines as a result of PCOS on the basis that she did not "mention this impairment or related symptoms" at her most recent consultative exam from April 2024.  (A.R. 69.)  While it is true that PCOS is not specifically mentioned in the April 2024 report, migraines—clearly a related symptom—are among the chief complaints noted.  (A.R. 687, 692.)  References to Plaintiff's PCOS and the migraines it causes are also found elsewhere in the medical records.  (A.R. 544 ("Physically [claimant] suffers from Polycystic Ovary Syndrome. This is a hormone imbalance disorder causing painful periods and migraines at a pain level of 8 to 9."); A.R. 562 ("She states she has 1–2 smaller migraines per week but can have more severe migraines around her menstrual cycles.").)

/ / /

25

The ALJ also discounted Plaintiff's reports of experiencing panic attacks and becoming easily fatigued as "not documented throughout her treatment records or in any mental status evaluations." (A.R. 70.)  But Platiniff's treatment records are replete with references to panic attacks (*see* A.R. 463–64, 467–68, 544, 557, 603, 634) and reports of low energy and/or becoming easily fatigued (*see* A.R. 463–65, 467, 470, 557, 560, 565–66, 592, 594, 596, 598, 602–03, 634, 637, 669, 678).

Further, in determining Plaintiff's RFC at step four, the ALJ repeatedly asserts Plaintiff's testimony is not fully consistent with the record evidence and then summarizes the record evidence without specifying which aspects of Plaintiff's testimony are undermined.  The ALJ states, for example, that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," and then summarizes some of Plaintiff's medical history without any reference or citation to her testimony and without identifying which aspects of Plaintiff's testimony are inconsistent with the record evidence.  (A.R. 73–74.)

The ALJ also states "claimant's activities of daily living stated in her function report and testimony are not consistent with her allegations of debilitating impairments," and summarizes the activities of daily living that Plaintiff testified

to, again without explaining which of Plaintiff's symptoms or impairments he finds to be undercut by these activities of daily living.  (A.R. 74.)

The ALJ then finds that "the claimant's symptomatology and treatment regimen support her allegations to a degree, but are not consistent with her allegations of debilitating impairments," and accompanies this boilerplate statement with a summary of some of the record evidence.  But again, the ALJ provides no explanation as to which parts of Plaintiff's testimony are unsupported by her symptomatology and treatment regimen.  (A.R. 74.)

The ALJ's broad statements that Plaintiff's symptoms are not supported by objective medical evidence and her activities of daily living are general findings which are plainly insufficient. *See, e.g., Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (finding error where "the ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony") (emphasis in original); *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (finding legal error "[b]ecause the ALJ failed to identify the testimony she found not credible, [and] she did not link that testimony to the particular parts of the record supporting her non-credibility determination"); *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (generalized findings are insufficient and cannot be reviewed for specific, clear, convincing reasons where the ALJ does not identify which testimony is not credible and which evidence contradicts that testimony).

In *Brown-Hunter*, the Ninth Circuit held an ALJ fell short of providing specific, clear, and convincing reasons for rejecting a claimant's testimony by merely reciting the medical evidence in support of his residual functional capacity finding. 806 F.3d at 489. The Court explained that summarizing the medical record "is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Id.* at 494 (emphasis in original).

Here, the ALJ's decision failed to specify which of Plaintiff's statements about her limitations were found not to be credible, and failed to connect those statements to specific evidence. The Court is not permitted to piece together the evidence identified by the ALJ and draw conclusions where the ALJ did not. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."); *Brown-Hunter*, 806 F.3d at 494 (explaining the district court may not draw inferences from the ALJ's summary of the medical record to find a basis for the adverse credibility determination where the ALJ did not himself draw those conclusions).

Without the required specificity, the Court cannot meaningfully review the ALJ's decision to determine whether the ALJ arbitrarily discredited Plaintiff's testimony. *Thomas*, 278 F.3d at 958; *Brown-Hunter*, 806 F.3d at 492 ("[A]lthough we will not fault the agency merely for explaining its decision with 'less than ideal clarity,' . . . we still demand that the agency set forth the reasoning behind its

28

decision in a way that allows for meaningful review.") (citation omitted).

Because the ALJ failed to point to the specific parts of Plaintiff's testimony he found not credible, and failed to link that testimony to particular parts of the record, the ALJ erred. Accordingly, the Court finds that the ALJ's credibility finding is not supported by specific, clear, and convincing reasons. As explained below, this error infected the ALJ's determination of the RFC at step four.

## C.    Determination of RFC

Plaintiff next argues that the ALJ's RFC determination is not supported by substantial evidence. Specifically, Plaintiff alleges that in assessing her RFC, the ALJ failed to comply with SSR 96-8p and SSR 16-3p. She argues these rulings require the ALJ to both analyze her ability to sustain a regular 40-hour work week and to incorporate all of her symptoms, including "complaints of high fatigue, low mood, low motivation, anhedonia, panic attacks, social anxiety, embarrassment to be out in public due to hirsutism secondary to PCOS, abdominal pain, chronic nausea, poor sleep and hygiene, and limited stamina." (Doc. 9 at 15.) Plaintiff also alleges that the ALJ failed to comply with SSR 19-2p because he did not incorporate limitations from her obesity into the RFC. (*Id.* at 19.)

The RFC is a measure of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *2. Social Security Ruling 96-8p requires the ALJ to assess a claimant's RFC

based on "*all* of the relevant evidence in the case record[.]"  SSR 96-8p, 1996 WL 374184, at *5 (emphasis in original).  The ALJ is not permitted to "cherry pick" from the record to determine the RFC.  *See Hoffschneider v. Kijakazi*, 2022 WL 3229989, at *1 (9th Cir. Aug. 10, 2022) (quoting *Garrison*, 759 F.3d at 1017 n.23 (9th Cir. 2014)).  Instead, in assessing the RFC, the ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8p, 1996 WL 374184, at *5.  When a claimant's impairments are supported by substantial evidence in the record, the ALJ must either consider them in the RFC or cite reasons for excluding them.  *See Robbins*, 466 F.3d at 886.  The ALJ is not required, however, "to take into account claimed limitations that the ALJ found to be incredible or not supported by the record."  *Ayers v. Kijakazi*, 2021 WL 4748595, at *4 (D. Mont. Oct. 12, 2021).

Although Plaintiff argues that the ALJ's RFC analysis did not specifically address her ability to sustain a 40-hour work week, the RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (emphasis in original).  Thus, the RFC assessment is, by definition, a measure of the claimant's ability to work on a regular and sustained basis.

As to whether the ALJ's RFC determination properly accounted for Plaintiff's obesity in accordance with SSR 19-2p, the Court finds that it did.  At

30

step two, the ALJ found that Plaintiff's obesity is nonsevere, and supported this finding with citations to the record indicating a lack of physical impairments due to obesity. (A.R. 69.) Moreover, in response to Plaintiff's testimony that she has difficulty walking and standing, the ALJ ordered Plaintiff to attend a physical consultative examination and Plaintiff was found to have no physical limitations. (A.R. 70.) Although Plaintiff also alleges that the ALJ failed to consider the ways in which her obesity could affect her mental impairments (Doc. 9 at 20), she does not cite to any record evidence indicating that her mental impairments are affected by her obesity. Thus, it was not error for the ALJ to exclude obesity-related limitations from the RFC since the ALJ properly supported his reasons for finding Plaintiff's obesity does not limit her functioning.

As to whether the ALJ properly incorporated all of Plaintiff's other limitations into the RFC, however, the Court finds that the ALJ improperly failed to analyze several of Plaintiff's documented impairments in determining the RFC. While the ALJ did provide reasons for discounting some of the impairments Plaintiff identified, such as her obesity, other limitations were omitted from the RFC determination without explanation.

As noted above, for example, the ALJ improperly discounted Plaintiff's reports of panic attacks and low energy at step three, and therefore failed to address these limitations in the RFC. While several of the other limitations Plaintiff

31

identified as improperly omitted are substantially overlapping (e.g. low mood, low motivation, and anhedonia), others, such as nausea are well-documented in the medical record and were reported by Plaintiff in her testimony.  It was error for the ALJ to fail to address these and other documented limitations to which Plaintiff testified without explaining the reasoning for excluding them from the RFC.

The ALJ's failure to either incorporate into the RFC or properly discount from the RFC the full extent of Plaintiff's limitations potentially affected the ultimate disability determination.  Thus, the Court cannot find that this error was harmless.

### D.      Evaluation of Medical Opinion of Dr. Alan Bauer

Plaintiff argues that the ALJ improperly discounted the findings of Dr. Alan Bauer, who conducted a Mental Status Exam of Plaintiff on March 9, 2020, and issued a three-page report on March 23, 2020.  Plaintiff acknowledges that the ALJ cited to Dr. Bauer's report in his decision but contends that the ALJ did not "properly evaluate Dr. Bauer's opinion finding that employment would not be recommended for the claimant," in accordance with 20 C.F.R. § 416.920c.  (Doc. 9 at 32.)

While 20 C.F.R. § 416.920c does set out consideration and articulation standards the ALJ must follow when evaluating medical findings, 20 C.F.R. § 416.920b(c)(3)(i) makes clear that statements from medical providers about

whether a claimant is capable of work are "neither valuable nor persuasive to the issue of whether [a claimant is] disabled" because the Commissioner is solely responsible for making disability determinations. 20 C.F.R. § 416.920b(c)(3)(i). Accordingly, the ALJ "will not provide any analysis about how [he] considered such evidence in [the] determination or decision, even under § 416.920c." *Id.*

Therefore, the ALJ did not err in failing to consider Dr. Bauer's opinion that "Employment would not be recommended due to [Plaintiff's] multiple emotional and physical disabilities." (A.R. 546.)

### E.    Vocational Expert's Hypotheticals

Plaintiff argues the ALJ failed to incorporate all of her impairments and limitations into the hypothetical questions posed to the vocational expert.

Hypothetical questions posed to the vocational expert must set out all the claimant's limitations and restrictions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422.

/ / /

33

As discussed above, the Court has determined the ALJ did not adequately support his reasons for discounting Plaintiff's testimony and determining the RFC. Accordingly, this error infected the hypothetical on which the ALJ relied, and in turn, the ALJ's determination that Plaintiff could perform work.

Therefore, the Court finds the ALJ's determination at step five is not supported by substantial evidence.

## F.    Remand or Reversal

"[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate. On remand, the ALJ shall reassess Plaintiff's RFC based on all the relevant evidence in the record, reconsider Plaintiff's credibility, and reassess whether Plaintiff can perform

34

other work in the national economy based upon a hypothetical to the vocational expert that incorporates all of the limitations supported by the record.

## V.    CONCLUSION

Based on the foregoing,  **IT IS ORDERED** that the Commissioner's decision be **REVERSED**, and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 31st day of March, 2026.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge